Filed 7/14/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GARY W. JACKSON, as Trustee, etc., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> JULIE MEYER, <br><br>     Objector and Respondent. | 2d Civ. No. B341863 <br> (Super. Ct. No. 2024PRTR025336) <br> (Ventura County) |

When a party in a pending marital dissolution serves a notice of trust revocation as required by the trust and the other party receives actual notice of it, does the failure to file the revocation in court render it void? Here we hold the answer is no.

Gary W. Jackson appeals from the denial of his petition to declare his deceased spouse's revocation of a trust invalid and to confirm him as successor trustee. (Prob. Code, §§ 1304, subd. (a), 17200, subds. (a), (b)(1) & (3).) He received notice of the trust revocation. His spouse did not withdraw any assets from the trust. After his spouse died and the marital dissolution action was dismissed, he filed a petition to invalidate the revocation. He contends the trial court erred when it upheld its validity even

though it was not filed in court. He also contends the court erred by denying his petition without an evidentiary hearing. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Gary W. Jackson and Linda T. Jackson[1] were married in 1971. In 2002 they created a revocable family trust (the trust), including a community trust for their community property. It named Gary and Linda as the trustees. The trust authorized Gary and Linda to revoke it by delivering a written revocation to the other trustee or by withdrawing their interest in the community property. The trust did not require that they file the revocation in court.

Linda filed for dissolution of marriage in April 2019 and served the petition and summons on Gary. The summons included the automatic temporary restraining order (ATRO) required by Family Code[2] section 2040, subdivision (a)(2)(A). The ATRO restrained them from "transferring . . . any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court." (§ 2040, subd. (a)(2)(A).) But the ATRO provided for certain exceptions, such as revoking "a revocable trust, pursuant to the instrument, provided that notice of the change is filed and served on the other party before the change takes effect." (*Id*., subd. (b)(2).)

Shortly after petitioning for dissolution of marriage, in May

---

[1] For ease of reference, we refer to Gary and Linda by their first names. No disrespect is intended.

[2] Subsequent undesignated statutory references are to the Family Code.

2019, Linda executed and notarized a notice of revocation of her interest in the community trust. Because of the "pending dissolution of their marriage," Linda revoked her interest in the community trust "effective immediately." The revocation also "deemed transferred" her interest in the community trust to a trust she recently created in her own name (Linda's trust). Linda did not withdraw any assets from the community trust.

Linda served Gary with the revocation by mail as required by the trust. Gary acknowledged he received service of Linda's revocation. The revocation was not filed with the court, as required by section 2040, subdivision (b)(2).

After Gary received notice of Linda's revocation, his counsel telephoned Linda's counsel and objected to the validity of the revocation because it had not been filed with the court. Linda's counsel disagreed in a letter asserting the revocation had been served as required because Linda's trust had been created before she filed her petition for dissolution of marriage and the ATRO went into effect. Linda's counsel also contended that Linda had not transferred the assets of the community trust. Gary did not challenge the revocation in family court. Nor did he file his petition to challenge the revocation's validity in probate court at that time.

Linda died in 2024. The marital dissolution case was dismissed without having terminated the marriage. Gary then filed a petition to declare the notice of revocation invalid and to confirm that he was the sole trustee. (Prob. Code, § 17200, subds. (a), (b)(1) & (3).) Attached to the petition was a copy of the revocation. Gary and Linda's daughter Julie Meyer, who was the trustee of Linda's trust, objected to the petition.

The parties argued the Probate Code section 17200 petition

at a hearing in probate court.  The court denied the parties'
request for an evidentiary hearing and denied the petition.  The
court noted that Gary did not contend the revocation violated the
terms of the trust.  It found that Gary's property interests in the
trust were not affected by the notice of revocation, and he was not
prejudiced by the revocation.  It also found that Linda
"substantially complied" with the requirements of the ATRO by
serving Gary and that he received actual notice of the revocation.
If it "were to invalidate the Notice of Revocation," the court
reasoned that "Linda's testamentary wishes would be
disregarded and [Gary] would reap the benefits of a windfall."
"By denying this petition, the Court gives effect to decedent
Linda Jackson's express testamentary intent."

DISCUSSION

*Revocation of trust*

Linda's trust revocation was served on Gary consistent
with the trust.  Gary does not contend otherwise and concedes
that he received actual notice of the revocation.  He nevertheless
contends reversal is required because the revocation was not filed
with the court.  We are not persuaded.

The probate court has "wide discretion" to make orders
regarding a Probate Code section 17200 petition.  (*Manson v.
Shepherd* (2010) 188 Cal.App.4th 1244, 1258; see Prob. Code,
§ 17206.)  "The applicable standard of review is therefore abuse of
discretion."  (*Manson*, at p. 1258.)  " '[T]he abuse of discretion
standard is not a unified standard. . . . The trial court's findings
of fact are reviewed for substantial evidence, its conclusions of
law are reviewed de novo, and its application of the law to the
facts is reversible only if arbitrary and capricious.' "  (*Id*. at pp.
1258–1259.)

4

The ATRO in section 2040 generally restrains both spouses in a pending marital dissolution proceeding from transferring or disposing of any property without written consent of the other party or order of the court. (§ 2040, subd. (a)(2)(A).) But it does not restrain certain actions, including "[r]evocation of a nonprobate transfer, including a revocable trust, pursuant to the [trust] instrument, provided that notice of the change is filed and served on the other party before the change takes effect." (*Id.*, subd. (b)(2).)

The legislative history of the statutory exceptions in section 2040 is discussed in *Raney v. Cerkueira* (2019) 36 Cal.App.5th 311, 322–330 (*Raney*).)[3] They were enacted in response to a recommendation of the Law Revision Commission to allow estate planning changes that would not dispose of the other spouse's property. (Recommendation: Estate Planning During Marital Dissolution (Oct. 2000) 30 Cal. Law Revision Com. Rep. (2000) pp. 603–620; *Raney*, at pp. 322–323.)

Legislative committee reports stated that the notice requirement was added " 'to minimize the opportunity for mischief.' " (*Raney*, *supra*, 36 Cal.App.5th at p. 325.) A legislative staff report stated notice was required so " '[t]he spouse would then be in a better position to protect against dissipation or concealment of marital property.' " (*Id.* at p. 326.)

The legislation included a filing requirement to help ensure notice to the other spouse. "The Legislature's concern was that

---

[3] *Raney* concerned eliminating a right to survivorship (§ 2040, subd. (b)(3)), which like the revocation of a trust here (*id.*, subd. (b)(2)), is permitted "provided that notice of the change is filed and served on the other party before the change takes effect."

5

the other spouse has actual knowledge of the severance. Whether this knowledge is obtained by a filing in the dissolution proceeding or in some other proceeding is of no moment." (*Raney*, *supra*, 36 Cal.App.5th at p. 330.) Here, this legislative purpose was served because it is undisputed that Linda served Gary with her notice of trust revocation. It is also undisputed that Gary received actual notice of Linda's trust revocation. He was therefore able to guard against " 'mischief' " and " 'protect against dissipation or concealment of marital property.' " (*Id*. at pp. 325, 326.)

Because Linda "substantially complied" with the statute, we conclude there is no prejudice to Gary and that reversal is not warranted. " 'Substantial compliance' means actual compliance in respect to the substance essential to every reasonable objective of the statute, as distinguished from mere technical imperfections of form. [Citations.] The essential inquiry is whether under the circumstances the policies underlying the statute were served." (*People v. Carroll* (2014) 222 Cal.App.4th 1406, 1421.) Because Gary admits he received notice shortly after the revocation was signed, Linda complied with the objectives of section 2040, subdivision (b)(2). To conclude otherwise would elevate form over substance. Filing by itself does not guarantee that an adverse party will be served. And here, it is the service of the revocation, not its filing, that provides notice to the other spouse.

Our conclusion that the revocation is valid is also consistent with the intent of section 2040, subdivision (b)(2) that " '[t]he ATRO should not restrain changes that cannot dispose of the other spouse's property.' " (*Raney*, *supra*, 36 Cal.App.5th at p. 323.) Here, the trust provided that either Linda or Gary had the right during their joint lifetimes to revoke the trust and

6

unilaterally withdraw their half interest in the community property.  Consequently, Gary had no vested right to Linda's portion of the community property.  (See *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1065–1066.)  As provided in Probate Code section 15401, subdivision (a)(1), Linda's revocation was effective when she gave notice by a "method of revocation provided in the trust instrument."  (See *Masry v. Masry* (2008) 166 Cal.App.4th 738, 739–740.)

It would make no sense to invalidate Linda's revocation when she complied with the trust and Gary received actual notice of it.

Gary did not seek a remedy in the dissolution action for violation of the ATRO.  Instead, it was not until five years after he received actual notice of Linda's revocation that Gary petitioned the probate court to declare Linda's trust revocation void.  By then, Linda had passed away.  Because of her death, the dissolution case had been dismissed when Gary filed his petition.  And once dismissed, the ATRO was terminated.  An ATRO "shall be in effect against the parties until the final judgment is entered or the petition is dismissed."  (§ 233, subd. (a).)  The probate court properly declined to enforce a restraining order that was no longer in effect where the purpose of the restraining order—to ensure that the other spouse has notice—had been fulfilled.

The probate court's ruling here reconciled two policies.  On one hand, the filing and service requirements of section 2040, subdivision (b)(2) serve to "protect marital property from dissipation or concealment."  (*Raney*, *supra*, 36 Cal.App.5th at p. 327.)  Gary's receipt of notice belies his contention that the lack of filing "affected [his] ability to plan for his financial future" by possibly relying on the "the continued existence of the trust."

7

The court's order also served the policy to enforce Linda's intent. "The primary duty of a court in construing a trust is to give effect to the settlor's intentions." (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 826.) The trust authorized Linda to revoke the trust by delivering a written revocation to Gary as trustee. Again, Gary does not contend otherwise. As a creator of the revocable trust, during her lifetime Linda retained the authority to revoke it and withdraw her interest in the community property. (Prob. Code, §§ 15401, subds. (a), (b)(1), 15800, subd. (a); § 761, subd. (b); *Estate of Giraldin*, *supra*, 55 Cal.4th at p. 1062.)

The court's denial of Gary's Probate Code section 17200 petition was not an abuse of discretion. And because Gary received actual notice of the trust revocation, no prejudice has been shown. (Cal. Const., art. VI, § 13.)

*Evidentiary hearing*

Gary also contends the probate court prejudicially erred when it declined to hold an evidentiary hearing on his petition. Again, we are not persuaded.

Probate Code section 1046 provides, "The court shall hear and determine any matter at issue and any response or objection presented, consider evidence presented, and make appropriate orders."

Here, both Gary and Meyer requested an evidentiary hearing. Gary's offer of proof was to present evidence that he had challenged Linda's revocation after receiving notice by voicing his objections to her counsel. The court accepted the offer of proof and modified its tentative ruling to state that Gary "failed to assert his claim in a court filing" before Linda's death. Gary's counsel agreed that was accurate. The final order added that

Gary's counsel objected by telephone, and Linda's counsel responded by letter. The court permitted the parties to augment the record to include the letter and a complete copy of the trust. Because the parties had fully briefed their positions, the court concluded there were no factual issues to try.

We conclude an evidentiary hearing was not required because there were no disputed issues of material fact. (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1247 ["use of the terms 'heard' or 'hearing' does not require an opportunity for an oral presentation, unless the context or other language indicates a contrary intent"].) And because we conclude that Linda's revocation complied with the purpose of section 2040, subdivision (b)(2), based on the undisputed facts, the absence of an evidentiary hearing was harmless. (See *Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1309–1310.)

DISPOSITION

The judgment is affirmed. Respondent shall recover her costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.                    CODY, J.

Roger L. Lund, Judge

Superior Court County of Ventura

_____

Ferguson Case Orr Paterson, Joshua S. Hopstone and David B. Shea for Plaintiff and Appellant.

Withers Bergman, Eric M. Tokuyama and Garen L. Kirakosian for Defendant and Respondent.